US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED
SEP 14 2016
DOUGLAS F. YOUNG, Clerk
By _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

EMILY QUIGLEY )
  Plaintiff, )
 )
v. ) Case. No. 16-5250 TLB
 )
MERCY HOSPITAL ROGERS, INC., d/b/a )
MERCY HOME HEALTH, d/b/a )
MERCY HOSPITAL NORTHWEST ARKANSAS )
 )
  Defendant. )

## COMPLAINT

Emily Quigley comes before this Court and for her Complaint states:

## INTRODUCTION

Emily Quigley ("Ms. Quigley") brings this action against Mercy Hospital Rogers, Inc., d/b/a Mercy Home Health, d/b/a Mercy Hospital Northwest Arkansas ("Mercy") for violations of the Family and Medical Leave Act, 29 U.S.C. §2601 *et seq.* ("FMLA"). The Plaintiff seeks declaratory judgment, compensatory and punitive damages, liquidated damages, prejudgment and post-judgment interest, reasonable attorney's fees and expenses, and any and all other relief to which she may be entitled.

## JURISDICTION

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 1343(3) and (4), and 29 U.S.C. §2617(a)(2) without regard to jurisdictional amount or diversity of citizenship.

2. Venue is proper under 28 U.S.C. §1391(b), and the alleged violations were committed within in the State of Arkansas, in the Western District thereof and that at the time of the discrimination, Ms. Quigley was a resident of Benton County, Arkansas.

## PARTIES

3. Plaintiff, Emily Quigley, at all times relevant hereto, was a female citizen of the United States and a resident of Benton County, Arkansas.

4. At all times relevant hereto, Defendant, Mercy Hospital Rogers, Inc. d/b/a, Mercy Home Health, d/b/a Mercy Hospital Northwest Arkansas was an Arkansas Nonprofit Corporation and the employer of Plaintiff.

## STATEMENT OF FACTS

5. Mercy is a Non-profit Corporation located at 2710 Rife Medical Lane, Rogers, Benton County, Arkansas 72758.

6. Mercy is an employer with fifty (50) or more employees within a seventy-five (75) mile radius.

7. On or about August 18, 2014, Ms. Quigley was employed by Mercy as a certified nurse assistant/patient care technician in Telemetry in the Intensive Care Unit, working three (3) days a week for twelve (12) hour shifts.

8. For the first six (6) months of employment, Plaintiff did not receive any "write-ups" or disciplinary actions.

9. Plaintiff learned she was pregnant in early February 2015, and informed her supervisor at Mercy, Jason Tarp ("Tarp"), shortly thereafter.

10. Tarp asked Ms. Quigley if she had any concerns and she told him she was worried about being on her feet and requested a lighter duty position or to be trained in the monitor room.

11. Tarp indicated that other employees had worked up until their due date, he was aware she would soon be leaving on maternity leave and no alternate positions were currently available.

12. As Ms. Quigley's pregnancy progressed she suffered from frequent and significant morning sickness.

13. Ms. Quigley met again with Tarp and asked if she had any other options. Tarp responded that if her sickness got worse, he might be able to arrange "light work."

14. On or about May 10, 2015, during the last hour of her shift at Mercy, Ms. Quigley suffered severe morning sickness, which rendered her unconscious in the bathroom.

15. On May 10, the date of the incident, Ms. Quigley had requested help, however her co-workers indicated that pregnancy does not give Ms. Quigley a right to "do whatever you want."

16. After she became ill on May 10, the charge nurse on duty sent Ms. Quigley home and instructed her, if she was still sick, to call and not come to work the next day.

17. On or about May 11, 2015, Plaintiff was still suffering from morning sickness and called in sick for her shift at Mercy as directed.

18. In the middle of May 2015, a few days after the incident May 10, Ms. Quigley was summoned to a meeting with manager Ginger Harper ("Harper"), regarding the incident.

19. During the meeting, Harper told Ms. Quigley that she had to write her up for job performance on May 10 and missing work on May 11.

20. As Ms. Quigley's pregnancy progressed she began experiencing sciatic nerve pain making walking very difficult.

21. In June of 2015, Ms. Quigley inquired of Harper about her options to take maternity leave early.

22. Ms. Quigley and Harper called the FMLA representative, together, to discuss her options. During this phone call, Ms. Quigley and Harper asked the FMLA representative if Ms. Quigley could take leave early and if she had to return to work after her leave in order to qualify for FMLA. The representative explained that Ms. Quigley would be qualified for maternity leave earlier than her due date and FMLA would apply regardless of whether she returned to work.

23. After the phone call with the FMLA representative, Harper informed Ms. Quigley that she would have to look into things further, but she did not believe Ms.

Quigley could take her maternity leave early nor terminate her employment after her maternity leave.

24. After the initial telephone call with Harper, Ms. Quigley called the Family Medical Leave Act (FMLA) office. Ms. Quigley was advised by the representative that she was qualified to take leave early and sent the proper paperwork.

25. Ms. Quigley received the Certification of Health Care Provider for Employee's Serious Health Condition, (Form WH-380-E, hereinafter "FMLA paperwork," from the FMLA office.

26. Ms. Quigley delivered the FMLA paperwork to Harper's office on or about June 15, 2015.

27. Brad Susy, the area supervisor, signed the FMLA paperwork on behalf of Mercy, and indicated thereon that he approved Ms. Quigley's leave to begin August 18, 2015.

28. On or about June 16, 2015, Ms. Quigley passed out while at work. She was treated in the hospital's Emergency Room and diagnosed as having a bacterial infection and dehydration. She was instructed by the emergency department physician not to return to work that day.

29. Between June 16 and June 26, 2015, Ms. Quigley took the FMLA paperwork, signed by the area supervisor, to her physician. to be signed and faxed to the FMLA office.

30. On or about June 26, 2015, while working her shift, Ms. Quigley was called to Harper's office, whereupon Tarp and Harper commenced a meeting with Ms. Quigley concerning her job performance.

31. At the June 26th meeting, Harper critiqued Ms. Quigley's performance at work and Tarp stated he thought Ms. Quigley was not performing at her highest ability because she was "pregnant and leaving soon."

32. Harper wrote a disciplinary action against Ms. Quigley for incorrectly prepping a patient for surgery. Ms. Quigley responded that she prepped the patient the way she was trained, but would modify her performance of the task going forward in compliance with Harper's correction.

33. At the June 26th meeting, Tarp stated it was "not fair" to Mercy for Ms. Quigley to take leave early and make Mercy fill her position.

34. Harper and Tarp instructed Ms. Quigley that she should quit so they did not have to fire her.

35. Harper and Tarp also informed Ms. Quigley that she would not be receiving the early leave and vacation time she requested, despite the leave having been approved on June 15, 2015.

36. At the June 26th meeting, Harper instructed Ms. Quigley sign a "write-up" related to her job performance.

37. Ms. Quigley pleaded to Harper and Tarp that she needed to keep her insurance and the paid leave to pay for her medical bills that were sure to result after the delivery of her baby.

38. Harper told Ms. Quigley to email her a two-week notice for when she'll be leaving her employment with Mercy.

39. No option aside from termination was given to Ms. Quigley by Harper.

40. Ms. Quigley finished her shift on June 27, 2015 and notified Harper by email that she felt attacked for asserting her legal rights, that the conduct of Mercy was unethical, and that she could no longer work under the present conditions.

41. Upon her termination, Ms. Quigley had to secure new insurance with a much higher deductible than her insurance with Mercy.

## COUNT I: VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT
## 29 U.S.C. §2601 ET SEQ.

42. Ms. Quigley restates and incorporates herein by reference the preceding paragraphs of her Complaint.

43. Under 29 U.S.C. 2612(a)(1)(A), an eligible employee shall be entitled to a total of twelve (12) workweeks of leave because of the birth of her son or daughter.

44. An eligible employee is defined as "an employee who has been employed…for at least 12 months by the employer" and who has "at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. §2611(2)(A).

45. Under 29 U.S.C. §2615, it is unlawful for an employer to *interfere with, restrain, or deny the exercise of or **attempt** to exercise,* any rights provided under the FMLA.

46. Ms. Quigley requested FMLA leave through her supervisor in June of 2015.

47. At the time of Ms. Quigley's anticipated leave, she would have been an eligible employee, because by August 18, 2015 she would have been employed by Mercy for at least twelve (12) months.

48. Ms. Quigley was forced to leave her position with Mercy because she attempted to exercise her FMLA rights by requesting FMLA benefits. She was retaliated against because she requested and inquired into her FMLA rights.

49. Defendant, by refusing to afford Ms. Quigley her leave, creating disciplinary actions as a result of her request for leave, and forcing her termination, violated the Family and Medical Leave Act.

50. There is more than a causal connection between the protected activity that Ms. Quigley engaged in and the employer's action.

51. The violation of FMLA was willful, wanton, intentional, and done with malice or with reckless indifference to Ms. Quigley's protected rights under 29 U.S.C. §2612.

52. As a result of their actions, Mercy violated 29 U.S.C. §2615.

53. As a direct and proximate result of Mercy's violation, Ms. Quigley has suffered emotional distress and anxiety, future pecuniary losses, potential loss of future employment, and loss of income and attendant employment benefits in an amount to be determined at trial.

## COUNT II: ATTORNEY'S FEES AND COSTS

54. Ms. Quigley restates and incorporates herein by reference the preceding paragraphs of her Complaint.

55. Pursuant to 29 U.S.C. §2617(a)(3), federal law provides for attorneys' fees and costs to be awarded to a party who prevails in any action commenced pursuant to the enforcement of the Family and Medical Leave Act.

56. Should Ms. Quigley prevail in her prayers for relief, she should be permitted reasonable attorneys' fees and costs.

## DAMAGES

57. Ms. Quigley restates and incorporates herein by reference the preceding paragraphs of her Complaint.

58. Ms. Quigley has suffered damages in an undetermined amount for loss of employment compensation past, loss of employment compensation future, increased health insurance costs, and attendant benefits.

59. Ms. Quigley has also suffered compensatory damages for her emotional distress and anxiety in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter Judgment in her behalf awarding her:

a. loss of employment compensation past;

b. loss of employment compensation future;

c. loss of attendant benefits;

d. compensatory damages;

e. punitive damages because of Defendants intentionally and malicious conduct in conscious disregard for the Plaintiff's rights;

f. prejudgment interest;

g. attorney's fees and costs;

h. for damages as set for in 29 U.S.C. §2617, including any wages, salary, employment benefits, interest at the prevailing rate, and liquidated damages;

i. for actual damages in the amount to be determined according to proof;

j. for consequential damages in amount to be determined according to proof;

k. All other relief to which she may be entitled.

**PLAINTIFF DEMANDS A JURY TRIAL.**

Respectfully submitted,
Emily Quigley

By: _____
Kristin L. Pawlik
ABA # 99177
Keith, Miller, Butler,
Schneider & Pawlik, PLLC

224 S. 2nd St.<br>
Rogers, AR 72756<br>
(479) 621-0006<br>
(479) 631-6890 (fax)<br>
kpawlik@arkattorneys.com

## VERIFICATION

State of Arkansas        )
                         )ss
County of Benton         )

    I, the undersigned, do hereby state upon oath that I am the Plaintiff in the above-styled matter, that I have provided my attorney with the information and factual allegations which have been set out within the foregoing pleading, and that the statements of fact contained therein are true and correct to the best of my knowledge, information, and belief.

_____
Emily Quigley

Subscribed and sworn to before me this 25 day of August, 2016.

_____
Notary Public

My commission expires:
11/7/24

Ashley N. Johns
Commission # 12402004
Notary Public - Arkansas
Benton County
Comm. Expires Nov. 7, 2024

11